RICHARDS *v.* MICHIGAN PRESSED STEEL CO.

MASTER AND SERVANT—PERSONAL INJURIES—PROXIMATE CAUSE—
NEGLIGENCE—ASSUMED RISKS—FELLOW-SERVANTS.

    Plaintiff was employed at a stamping press taking sheets of
    steel from the machine after they had been stamped. A
    gauge, used for the purpose of measuring the steel, became
    loose and the sheet caught under it. Plaintiff attempted to
    loosen the steel with his hand, and called out to the feeder to
    pull it back. The feeder misunderstood and tripped the
    machine causing the die to descend cutting off plaintiff's
    hand. *Held,* that plaintiff assumed the risks of his employ-
    ment, such risks, according to his own testimony, being
    known to him; that the misunderstanding of the feeder, a
    fellow-servant, was the proximate cause of the injury; and
    that a verdict was properly directed for the defendant.[1]

Error to Washtenaw; Kinne, J. Submitted January
21, 1909. (Docket No. 17.) Decided March 3, 1909.

Case by Harry Richards against the Michigan Pressed
Steel Company for personal injuries. There was judg-
ment for defendant on a verdict directed by the court,
and plaintiff brings error. Affirmed.

*Tracy L. Towner* and *Lehman, Riggs & Lehman,* for
appellant.

*Fred L. Vandeveer,* for appellee.

McALVAY, J. Plaintiff, a young man 24 years of age,
while in the employment of defendant company, at its
place of business in Ypsilanti, was injured. Defendant
company owns and operates a manufactory at Ypsilanti
where certain articles are made from sheet steel plates,
which are passed through certain presses and are stamped
out. Plaintiff at first went to work upon the smaller

_____
    [1] As to duty of master to warn or instruct servant, see note to
*James* v. *Rapides Lumber Co.* (La.), 44 L. R. A. 33.

presses, and so continued until the day before the accident. On that day he was put at work upon the large Hamburg press, which had just been set up. These presses are all in one room, about 35 by 45 feet in size. This large press is described as being from 12 to 15 feet high, and 4 to 5 feet square. Dies or stamps in two parts, which exactly fit into each other, are used in these presses. The lower part of the die is securely fixed into the heavy iron table or base, which is stationary; the upper part into the upper jaw, or movable part of the press. They may be separated about six inches. When power is applied the upper part descends upon the lower part, and with great force presses the metal sheet into it, producing the article for which the dies then in use are made. At this time this press was stamping out hopper ends for the Superior grain drill. In operating this press the steel sheets used are placed upon a table, level with the base or lower part of the press, and fed one at a time into it. The sheets were 8 feet long, and 16 or 18 inches wide. The pieces they were stamping out at this time were about 18 by 14 inches in size. Plaintiff's place of work was back of the press. On this side there were two gauges affixed to the corners of the press. The steel sheets were put into the press by the operator, who stood in front of it, and each was shoved by him through between the dies towards plaintiff, who placed it in position against these gauges, and called out "All right" to the operator, who then tripped the press, and a piece was stamped out. The tripping was done by the operator in front pressing his foot upon a lever. This operation was repeated until a sheet was used up, when another would be put through in like manner. One of these gauges had become loose on the afternoon before the accident, and had been fixed by the foreman at the request of plaintiff. It became loose again in the morning, and, at the request of plaintiff, it was tightened by the foreman. On being told the third time that it was loose again, he said, "Let it go. I won't fix it;" or words to that effect. The loosening of this

gauge allowed the edge of the sheet of steel to catch under it. It would make it necessary to pull it back and place it in position. In a short time after this last notice to the foreman a sheet was placed on the bed of the machine, and in pushing it through it caught under this gauge. Plaintiff attempted to get it loose with his hand in the machine under the die. Plaintiff testified:

"The sheet would not come back against the gauge, but it was loosened, and it wedged, and I told him to pull the end of the steel towards him, and it would have a tendency to pull it away. I also had my hand here, trying to push it up. Of course, I had to have my hand there. I couldn't get it out any other way, and he misunderstood me. Instead of pulling it towards him, as I told him to do, he tripped the press, and the die descended, and cut off this portion of my hand."

There is no other testimony as to how the accident occurred. Defendant at the close of plaintiff's case moved the court for a verdict in its behalf. This motion was granted for the reasons (a) that plaintiff assumed the risk; (b) that the negligence, if any, was the negligence of a fellow-servant; (c) that the looseness of the gauge was not the proximate cause of the injury; (d) that plaintiff was guilty of contributory negligence.

It appears from the record that plaintiff was a young man of intelligence, and his testimony shows that he is truthful and honest. He knew that the purpose of the gauge in question was to save material, and not to protect employés. He says he knew what would be the consequences if his hand was caught under the stamp; that it was dangerous to put his hand under it. He knew that the attempt to repair the gauge was abandoned. What excuse can there be offered for him, with all this knowledge, for putting his hand into a place of danger? It is claimed that he should have been instructed how to do his work at this press; that the foreman stood by and watched him at his work for a considerable time, and gave him no instructions of caution. This may be

answered, *first*, by saying that there was no hidden peril —all the danger was obvious and known to plaintiff; and, *second*, the record does not show that he was at that time doing his work in an improper manner.   Plaintiff's work was not to operate this press.   He has described his work. It was to put the end of the steel sheet in the proper position to be stamped and to take away the pieces as fast as they were stamped out.   There was but one danger of injury to him while working at that press, and that was the danger of having his hand caught by the descending die.   He says that this was obvious and known to him. Further instruction was therefore unnecessary.   It is fundamental that, where a person knows and understands all of the obvious risks to which he is exposed and continues his work, he assumes all such risks.   Bailey on Masters' Liability, p. 169 et seq.

It is insisted that the loose gauge was the proximate cause of this injury, and that the act of the fellow-servant, if it was negligence, concurred with the negligence of defendant.   If we are right in the conclusion just reached, that plaintiff assumed this risk, then this last contention is not tenable.   Considering this proposition under the facts in this case independent of other questions, can we say that the loose gauge was the proximate cause of the injury ?   The machine was at rest.   Plaintiff had made an unsuccessful effort to release the sheet of steel.   His hand was in a dangerous position for some time, and he left it there, calling out to the operator to pull the sheet back.   Misunderstanding the order, the operator tripped the press, which caused the injury.   This was the direct and proximate cause.   Without it no injury was possible.   The injury was caused by the carelessness, negligence, or misunderstanding of a fellow-servant.   The risk of injury in this case arising from the act of this fellow-servant was a risk assumed by plaintiff when he entered upon this employment.   This rule is so well established and recognized that a citation of the authorities is unnecessary.

There is no question in the case of the incompetency of this fellow-servant.

It will not be necessary to consider other reasons given by the trial court for his action.

The judgment is affirmed.

Blair, C. J., and Grant, Montgomery, and Moore, JJ., concurred.